### In re THE CELOTEX CORPORATION, Debtor.

### The Celotex Corporation and Carey Canada, Inc., Plaintiff,

v.

### Allstate Insurance Company, et al., Defendants.

**Bankruptcy No. 90–10016–8G1. Adversary No. 8:92–ap–584–PMG.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 14, 2005.

Carrie Beth Baris, Andrew T. Jenkins, Bush Ross PA, Tampa, FL, Michael G. Mardis, Sivyer, Barlow & Watson, PA, Tampa, FL, Kevin E. Irwin, Cincinnati, OH, for debtor.

## ORDER ON FIBREBOARD CORPORATION'S MOTION FOR ENTRY OF AN ORDER PROTECTING RESERVE ACCOUNT PENDING APPEAL

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Entry of an Order Protecting Reserve Account Pending Appeal. The Motion was filed by Fibreboard Corporation.

The Motion relates to the funds remaining in a Reserve Account originally established in 1992 for the benefit of prepetition judgment creditors of the Debtor who were protected by supersedeas bonds while the Debtor appealed their judgments. Fibreboard Corporation (Fibreboard) claims an interest in the Account because it paid certain of the judgments, and therefore asserts that it is subrogated to the rights of the judgment creditors.

In the Motion under consideration, Fibreboard contends that the funds may be at risk because of legislation currently pending in Congress that is intended to create a national system for the administration of asbestos personal injury claims. Consequently, Fibreboard requests the entry of an Order "requiring the reserve account to be protected. Fibreboard requests that any such order require that the funds be segregated, continue to carry interest, and be held until further order of this Court, entered after notice and hearing upon motion by a party or on the Court's own initiative." (Doc. 1375, pp. 3–4).

### Background

The Debtor filed a petition under Chapter 11 of the Bankruptcy Code on October 12, 1990.

By the time that the bankruptcy petition was filed, the Debtor "had become the judgment debtor in over 100 asbestos lawsuits and had posted various supersedeas bonds to stay collection of these judgments pending appeals." (Main Case, Doc. 1371).

After the petition was filed, certain judgment creditors filed Motions for Relief from Section 105 Stay and requested permission to proceed against the supersedeas bonds, notwithstanding the Debtor's pending bankruptcy case. On May 29, 1992, the Court entered an Order on the judgment creditors' Motions. (Main Case, Doc. 1371). In the Order, the Court denied the Motions, provided that certain conditions were satisfied. The Debtor was required to submit a report to the Court, for example, that listed all of the judgment creditors who were protected by supersedeas bonds, together with the amount of the judgment, the amount of the bond, and other relevant information. The Order further provided:

3. If any supersedeas bond is insufficient or will become insufficient to protect completely any judgment affirmed on appeal through confirmation of the plan, Debtor, within 30 days of filing the report, *shall create an interest-bearing reserve account* or increase the face amount of any supersedeas bond to cover the full amount of any judgment through confirmation. *Such reserve account, if established, shall be disbursed only upon order of this court.*

(Main Case, Doc. 1371, p. 10)(Emphasis supplied).

Following the entry of the Order, all of the issues and claims associated with the Reserve Account were resolved, except the claim asserted by Fibreboard. On December 19, 2001, therefore, the Court entered an Order Authorizing Release of Certain Funds Held in Interest Bearing Reserve Account. (Main Case, Doc. 12883). In the Order, the Court determined:

2. The Trust is hereby authorized to release all funds in the interest-bearing reserve account established by the Debtors (the "Account") in accordance with this Court's Order entered on May 29, 1992, ("Celotex II") as requested in the Motion and to deposit such funds in the Trust's general operating account, *with the exception of $3,000,000.00 which sum shall remain in the Account until further Order of this Court to protect the disputed claims of Fibreboard Corporation.*

(Main Case, Doc. 12883, p. 1)(Emphasis supplied).

The Debtor's dispute with Fibreboard has been litigated in the above-captioned adversary proceeding. Generally, the dispute arises from the status of Fibreboard and the Debtor as joint judgment debtors with respect to certain prepetition asbestos bodily injury lawsuits. After the filing of the petition, however, Fibreboard "purchased and was assigned bodily injury judgments against itself and Celotex." (Doc. 1358, p. 4). Fibreboard then sought to be paid from the Reserve Account on the theory that it was subrogated to the rights of the bodily injury judgment creditors that it had paid.

On February 10, 2003, the Court entered an Order on Celotex Corporation and Fibreboard's Motions for Summary Judgment. (Doc. 1357). In the Order, the Court determined that Fibreboard was not entitled to a right of subrogation.

Further, this Court finds that either under § 509 or a Florida theory of equitable subrogation, Fibreboard is not entitled to subrogation. Fibreboard is primarily liable with Celotex and, under each theory, it cannot be subrogated for paying its own debts. Further, this Court finds that to allow Fibreboard to

be subrogated to funds specifically segregated for bodily injury claimants it was found to have injured would be unjust. Further, the payment by Fibreboard does not unjustly enrich the Debtor. The creditors of both Celotex and Fibreboard are benefited by disallowing Fibreboard's claim.

(Doc. 1357, p. 27). A Final Judgment was entered in favor of the Debtor and against Fibreboard. (Doc. 1358).

On February 19, 2003, Fibreboard filed a Notice of Appeal of the Order and Final Judgment. (Doc. 1360).

On the same date, February 19, 2003, Fibreboard also filed a Motion for Stay and to Continue Reserve Account Pending Appeal. (Doc. 1359). On May 9, 2003, the Court entered an Order granting Fibreboard's Motion. (Doc. 1369). Specifically, the Court determined:

2. The Asbestos Settlement Trust and Plaintiffs shall maintain the interest-bearing reserve account established by the Debtors pursuant to this Court's Order entered on May 29, 1992, as reduced by order dated December 19, 2001, in the amount of $3,000,000.00 to protect the disputed claims, liens or interests of Fibreboard Corporation pending any appeal or appeals from this Court's order and final judgment dated February 10, 2003.

(Doc. 1369, p. 2).

The Asbestos Settlement Trust maintains the Reserve Account at Wachovia Bank. As of April 30, 2005, the account contained the sum of $3,138,468.02. (Doc. 1375, Exhibit A).

Fibreboard's appeal has been fully briefed and remains pending in the United States District Court.

In the Motion currently under consideration, Fibreboard asserts that the funds in the Reserve Account may be at risk because Congress is presently considering legislation that would establish a national process for the administration of asbestos claims. According to Fibreboard, "it is uncertain whether this legislation will require the transfer of existing asbestos trust funds to a national trust fund and if so, whether such terms could be broadly construed so as to include the reserve account currently existing to protect Fibreboard's claims." (Doc. 1375, pp. 2–3). Consequently, Fibreboard requests that the Court impose a mechanism to protect the Reserve Account, such as depositing the funds in a trust account maintained by Fibreboard's attorney, "or some other sort of segregated account other than management by the Trust." (Transcript, p. 7).

The Trust and the Debtor filed a written Response opposing the relief requested by Fibreboard. In the Response, the Trust asserts that it is joining with other existing asbestos trusts to challenge the constitutionality of the proposed legislation. The Trust also contends that the "applicability of the provisions of the proposed FAIR Act to the funds as a contingent asset of the Trust held in the Reserve Account cannot be determined at the present. ... More importantly, what can be done to 'protect' the funds in the Reserve Account from legislative action is unknown. The suggestion that by having the funds held in trust by Celotex's counsel instead of in the Reserve Account would somehow better safeguard Fibreboard's claim to the funds is sheer conjecture. No good reason exists at this time to disrupt the *status quo*." (Doc. 1384, pp. 5–6).

### · Discussion

### I. The PDAC's Motion

Fibreboard acknowledges that it learned of the pending legislation "when its counsel received a similar motion to this one filed herein by the Property Damage Advi-

sory Committee." (Doc. 1375, p. 2, n. 1). The Property Damage Advisory Committee (PDAC) has requested an order directing the Trust to transfer the Remaining Disputed Property Damage Claims funds, as described in the Motion, to the PDAC to protect them from the pending legislation. The Remaining Disputed PD Claims funds are held by the Asbestos Settlement Trust pursuant to the confirmed Plan of Reorganization in this case.

Contemporaneously with this Order, the Court is entering an Order denying the Motion filed by the PDAC. In the Order on the PDAC's Motion, the Court finds that it cannot compel the Trust to transfer the funds to the PDAC as requested, because (1) the transfer is not consistent with either the Plan Documents or the Trust Documents that govern the administration of the Trust, and also because (2) the PDAC has not shown that the transfer would achieve its intended purpose of protecting the funds from the reach of the proposed legislation.

## II. Fibreboard's Motion

The PDAC's Motion differs from Fibreboard's Motion in at least two significant respects.

First, the PDAC's Motion relates to funds that were "earmarked" for holders of allowed but unpaid property damage claims. Fibreboard's Motion, on the other hand, stems from judgments that were initially entered in favor of asbestos personal injury claimants. The pending legislation, in its present form, relates only to asbestos personal injury claims, and not to property damage claims.

Second, the Remaining Disputed PD Claims funds that are at issue in the PDAC's Motion constitute assets of the Asbestos Settlement trust that are governed by the confirmed Plan and the Trust Documents contemplated by the Plan. The Reserve Account that is at issue in Fibreboard's Motion, however, was established pursuant to an Order entered in 1992, prior to confirmation of the Debtor's Plan and the attendant creation of the Asbestos Settlement Trust.

Regardless of the separate origin of the Reserve Account, the Court finds that Fibreboard's Motion should be denied to the extent that it seeks the transfer of the funds contained in the Reserve Account to any other account. After considering both the nature of the Reserve Account and the proposed legislation, the Court finds that Fibreboard has not established that the transfer would achieve the intended result of protecting the funds from incorporation into the proposed national trust fund.

The Fairness in Asbestos Injury Resolution Act of 2004 (the Fair Act), as currently proposed, clearly is designed to effectuate a sweeping change in the manner in which asbestos personal injury claims are processed and paid. See, for example, § 202(f) of the proposed Act, which generally provides that the Act supersedes all bankruptcy reorganization plans and the treatment of asbestos personal injury claims under those plans. (Fair Act, § 202(f)).

To implement this sweeping change, the Fair Act calls for the creation of the Asbestos Injury Claims Resolution Fund, "which shall be available to pay" asbestos personal injury claims. (Fair Act, § 221(a)).

Section 202(a)(1) of the Fair Act provides that "Defendant participants shall be liable for payments to the Fund in accordance with this section based on tiers and subtiers assigned to defendant participants." Participants in the tiers include "debtors," defined as "a person that is subject to a case pending under a chapter of title 11, United States Code, on the date

of enactment of this Act or at any time during the 1–year period immediately preceding that date." (Fair Act, §§ 201(3), 202(b)).

The amount of a "defendant participant's" liability is determined by a complex series of calculations based on the participant's "prior asbestos expenditures" and revenues, among other factors. (Fair Act, §§ 202(b), 202(d), 203(a)).

For purposes of the issue in this case, however, the significant feature of the proposed Act is its broad definition of the "participants" that would be liable for payments to the Fund.

The term "participant" is defined to mean "any person subject to the funding requirements" of the Act, including "any defendant participant subject to liability for payments" under the Act, and "any successor in interest of a participant." (Fair Act, § 3(11)). The term "successor in interest" is defined as "any person that acquires assets, and substantially continues the business operations, of a participant." (Fair Act, § 3(15)).

Additionally, § 203(a) of the Act, entitled "Subtiers," provides that "persons or affiliated groups shall be included within Tiers I through VII and shall pay amounts to the Fund in accordance with this section." (Fair Act, § 203(a)(1)). "Person" is defined to mean "an individual, trust, firm, joint stock company, partnership, association, insurance company, reinsurance company, or corporation." (Fair Act, § 3(12)). "Affiliated group" is defined to mean "a defendant participant that is an ultimate parent and any person whose entire beneficial interest is directly or indirectly owned by that ultimate parent on the date of enactment of this Act." (Fair Act, § 201(1)).

The provisions recited above illustrate the expansive reach of the proposed Act in terms of the multiple entities that may be liable to the Fund. The liable entities, for example, appear to include "defendant participants," "successors in interest" to participants, "debtors," and "affiliated groups," all as broadly defined in the Act. (See also, the enforcement provisions set forth in § 223 of the Fair Act.)

In this case, Fibreboard requests that the Court impose a mechanism to protect the Reserve Account, such as transferring the funds to a trust account maintained by Fibreboard's attorney, "or some other sort of segregated account other than management by the Trustee." (Transcript, p. 7). Given the expansive reach of the Fair Act, the Court is not persuaded that such a transfer would shield the assets from liability to the Asbestos Injury Claims Resolution Fund, provided other conditions contained in the Act were satisfied.

Additionally, it appears that Fibreboard filed a petition under Chapter 11 of the Bankruptcy Code on October 5, 2000, and is presently a debtor in a Chapter 11 case pending in the District of Delaware, Case No. 00–3842–MFW. (Doc. 1384, p. 3). Consequently, even if the funds in the Reserve Account were transferred to a separate account for Fibreboard's benefit, the Fair Act may reach the funds by applying the same provisions to Fibreboard that would apply to the Debtor.

Fibreboard has not shown that the requested relief would achieve the intended purpose of protecting the Reserve Account from incorporation into the proposed national asbestos fund. The Court therefore finds that Fibreboard's Motion should be denied to the extent that it seeks the transfer of the funds to a different account.

The Trust shall continue to hold the funds in the Reserve Account subject to the conditions required in the prior orders of this court, however, including the condi-

tion that the Account bears interest, and the condition that the funds shall be disbursed only upon court order. (Main Case, Doc. 1371, p. 10).

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Entry of an Order Protecting Reserve Account Pending Appeal filed by Fibreboard Corporation is denied to the extent that it seeks the transfer of the funds currently held in the Reserve Account.

2. The Trust shall continue to hold the funds in the Reserve Account, subject to the conditions required in the Court's Order on Motions for Relief from Section 105 Stay entered on May 29, 1992 (Main Case Doc. 1371), the Order Authorizing Release of Certain Funds Held in Interest Bearing Reserve Account dated December 19, 2001 (Main Case Doc. 12883), and the Order Granting Motion for Stay and to Continue Reserve Account Pending Appeal entered on May 9, 2003 (Adv.Doc. 1369).